UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

––––––––––––––––––––––––––––––––––––––––

SYLVESTER SMITH and                                    03-CV-0548E(Sr)
DEMETRIUS NEWMAN,

            Plaintiffs,

      -vs-                                                         MEMORANDUM

NIAGARA FRONTIER TRANSPORTATION                                      and
   AUTHORITY,
CORNELL BAINES, Individually and as Assistant              ORDER[1]
   Air Terminal Supervisor, and
WILLIAM FLANAGAN, Individually and as
   Airport Superintendent,

            Defendants.

––––––––––––––––––––––––––––––––––––––––

## INTRODUCTION

     The Amended Complaint herein was filed on August 22, 2003 (Dkt. #6).  In

it, plaintiffs, Sylvester Smith ("Smith" or "plaintiff Smith") and Demetrius Newman

("Newman" or "plaintiff Newman"), allege that defendants Niagara Frontier

Transportation Authority ("NFTA"), William Flanagan ("Flanagan") and Cornell

Baines ("Baines"), discriminated against them on the basis of race and sex,

conspired to commit such discrimination, interfered with their contractual

employment relations based on race and engaged in racial and sexual harassment

––––––––––––––––

     [1]This decision may be cited in whole or in any part.

against them in violation of both state and federal laws.[2]  During the time period

relevant to the Amended Complaint, plaintiffs, African American males, were

custodial workers, employed by the NFTA at the Buffalo Niagara International

Airport, defendant Flanagan (Caucasian male) was the Air Terminal

Superintendent and defendant Baines (African American male) was the Assistant

Air Terminal Supervisor.  Baines has filed a cross-claim against NFTA, while

Flanagan and NFTA have filed a cross-claim against Baines.

On January 20, 2006, defendants Flanagan and NFTA filed a joint motion

for summary judgment seeking dismissal of plaintiffs' Amended Complaint in its

entirety (Dkt. #20).  On that same date, defendant Baines also filed a motion for

summary judgment (Dkt. #24) seeking the same relief.  While two separate

---

[2]The Amended Complaint pleads eight separate claims for relief, each against all Defendants.  The First cause of action asserts a "hostile work environment" and other discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, as amended.  The Second cause of action asserts a "hostile work environment" and other discrimination on the basis of sex, also in violation of Title VII.  The Third cause of action asserts due process based race discrimination in violation of 42 U.S.C. §1983.  The Fourth cause of action asserts equal protection based race discrimination, also in  violation of 42 U.S.C. §1983.  The Fifth cause of action alleges a conspiracy among the defendants to commit race discrimination in violation of 42 U.S.C. §1985.  The Sixth cause of action alleges that "Defendants interfered with Plaintiffs' contractual employment relations, on the basis of race" in violation of 42 U.S.C. §1981.  The Seventh cause of action asserts race discrimination in violation of the New York Executive Law (commonly referred to as the New York Human Rights Law), and the Eighth cause of action asserts sex discrimination, also in violation of the New York Executive Law. Pursuant to Stipulation, plaintiffs voluntarily discontinued their first two claims for relief under Title VII of the Civil Rights Act of 1964, as amended, against both individual Defendants but not the NFTA.

motions have been filed[3], much of the supporting documentation has been submitted jointly by all defendants.   All the necessary papers, responses and replies have been filed and the matter, having been presented in oral argument on June 16, 2006, is now before this Court for decision.

## BACKGROUND

As stated above, plaintiffs are African American males and were custodial workers for the NFTA at the airport, working the night shift during time period relevant to the Amended Complaint herein.   Both plaintiffs were Union members of Local 1949 of the Intn'l. Longshoreman's Assoc. — the Union.   By way of seniority, Smith also held the title of "Custodial Group Leader".   Baines was Assistant Airport Terminal Supervisor[4].   Flanagan, as Air Terminal Superintendent, was the supervisor of plaintiffs and Baines.   Further, it is undisputed that plaintiffs were aware of their options for filing grievances with

---

[3]Flanagan and NFTA are represented by the NFTA Legal Department, while Baines is represented by private counsel. Further, the bases for the motions are somewhat different and relate differently to the various causes of actions asserted by plaintiffs. The Court, however, will address the motions collectively.

[4]This position was created in 2000 as a supervisory position over the night shift custodial crew. Smith had applied for this position but was not hired while Baines was. Smith stated that he filed a union grievance with respect to this, which grievance he said the union did not pursue. In it, he complained that he should have been awarded the position and that "according to [his] job description, [he was] already supervising a custodial crew".  (See Dkt. 20-4, p. 22). Further, there was a conflict between Smith and Baines regarding Smith's perceived role as Custodial Group Leader as opposed to Baines' role as Assistant Airport Terminal Supervisor which conflict required Flanagan's intervention. (See Dkt. #20-11 and #22-2).

the union and were also familiar with the NFTA's internal complaint procedures, both having availed themselves of such procedures in the past.

Most of the allegations in plaintiffs' Amended Complaint aver improper behavior by defendant Baines, with acquiescence or a lack of appropriate action from Flanagan and/or the NFTA.  Some relate discrete incidents between only plaintiff Smith and Baines, while others detail incidents between only plaintiff Newman and Baines.  Some allege behavior of Baines with respect to plaintiffs collectively, a few of which are alleged to have been witnessed by others. Defendants have denied most of the allegations.

*Plaintiff Smith's claims as they relate to discrimination based on race*

Paragraphs 14 through 22 of the Amended Complaint describe an alleged incident between Smith and Baines occurring on or about March 2, 2000, after Smith's shift had ended wherein plaintiffs claim Baines threatened Smith physically and made derogatory remarks about both Caucasians and African Americans related to what had happened at a custodial staff meeting earlier in the day. Baines denies the incident and admits only that a custodial staff meeting had occurred earlier that day regarding a proposed change in the break schedules for that shift.  It is not disputed that Smith reported the incident to both the NFTA Transit Police and the Affirmative Action office.  The gravamen of the complaint in both reports was that Baines had threatened Smith for not taking his side in a

disagreement with the other workers. While it mentioned that the terms "white trash" and "nigger" had been used, it did not per se complain about that. The focus of the complaint was clearly the physical threats. The NFTA conducted an investigation wherein Baines denied the allegations and, as there were admittedly no other witnesses to the event, the matter was closed with Baines being re-instructed as to his role as supervisor.

Smith's other allegations involving his racial discrimination claims aver that Baines "continuously", "regularly", "repeatedly" or "on numerous occasions" referred to African Americans as "niggers", referred to himself as "the house nigger" and spoke about slavery times. It is also alleged that Baines told Smith that Smith would never be promoted because he was "the kind of nigger who teaches the other niggers to read". On one occasion at the grill in the airport while on break, Baines allegedly stated, in front of both plaintiffs and another witness (Brian Morrow), "I will fire you niggers ***". Smith has admitted that he, himself, has used the term "nigger" at work but could not recall the specific context in which it was used and assuredly stated that he would never use it in a derogatory fashion.

It is further alleged that Baines told Smith that he would not get promoted to Assistant Air Terminal Supervisor when he applied for the position on several occasions. Specifically, in the fall of 2001, when a Caucasian female was hired

instead of Smith, Baines told Smith that he told his "black ass" that they were going to hire a white female because, as Flanagan told him, they already had, as Assistant Air Terminal Supervisors, "a black male, a white male, and a towel-head Eddie Sahlah (sp?) whatever he is" and Flanagan "wants someone for the position of white female".  Other than admitting that Nancy Kearns had been hired as Assistant Air Terminal Supervisor in October 2001, defendants deny the alleged motivation behind the hiring of Kearns or that the conversations or comments occurred as plaintiffs have averred.

*Plaintiff Newman's claims as they relate to discrimination based on race*

Newman, too, alleges that Baines regularly referred to African Americans as "niggers" and that Baines often threatened to fire Newman's "black ass".  The Amended Complaint also avers to one instance when Newman was called "black and lazy" which was allegedly said by another NFTA employee (Nancy Kearns).

In response to defendants' motions herein, Newman recounts several comments made by Baines wherein Baines purportedly said, in Newman's presence, that he hated "niggers", that "being a nigger is a mother", that if he had a chance he would be a white man, that he was "the white man's nigger, he wants me to get rid of you all" and "you know why they hired me, to fire all the

niggers".  Plaintiffs provided an affidavit from Newman's brother[5] corroborating some of these statements.

Also in response to defendants' motions and not averred to in the Amended Complaint, Newman recounts several occasions wherein he was denied promotion to a Facility Maintenance Department position, alleging that he was not given any reason why he was not promoted and that a person of lesser seniority who had once been caught sleeping during a shift was hired in his stead.  Defendants provided evidence of Newman's lack of required experience for the position and poor performance on the qualifying test and in the interview.

*Plaintiff Smith's claims as they relate to discrimination based on sex*

The Court notes that this Second cause of action is a hostile work environment based on sex claim and necessarily against defendant NFTA only. To that end, in late summer of 2001, Baines gave Smith a lewd photograph which depicted an elderly woman positioned to have sex with a male whose face cannot be seen.  Handwritten next to the woman was the name "Sylvester" (Smith) and next to the man was the name "Bill" (Flanagan).  Several months later, in November of 2001, Smith filed an internal NFTA complaint regarding this incident. Baines admitted that he wrote the names on the photograph and gave it to

---

[5]Who was also employed as a custodial worker during a portion of the relevant time period.

Smith[6], stating that it was intended as a joke because Smith was often complaining how Flanagan was always "screwing him" and that he and Smith often shared "off color" jokes with one another.  Baines was issued a formal written warning and advised that he would be fired if this type of behavior happened again.  This message was reinforced in a meeting with Baines and members of the Affirmative Action office.

In response to defendants' motions, plaintiffs disclosed a bawdy cartoon drawing which Smith alleges he received and believes was drawn by another NFTA employee.  The cartoon depicts a nude Smith bending over a desk along side a half nude Flanagan holding a large phallic object and contains written text which purports to be Flanagan berating Smith for 'going over his head' and Smith purportedly saying that Flanagan was 'sticking it to him' and that he felt threatened.  Plaintiffs offer no other information about this cartoon or the circumstances surrounding Smith's receipt of same.  While the aforementioned photograph forms a basis of Smith's hostile environment based on sex claim, this cartoon was not mentioned in the Amended Complaint.

Other allegations regarding Smith's hostile work environment based on sex claim against the NFTA charge that, in late summer 2000, Baines took both Smith

---

[6]While Baines admits that he gave the photograph to Smith through another employee, he does not admit, as Smith alleges, that it was widely distributed for other employees to see.

and Newman aside and pointed out white male passers-by in the airport, stating with which of them he would like to have sex.  Plaintiffs also allege that Baines "repeatedly and often in the presence of others" made lewd sexual comments and engaged in inappropriate sexual behavior (*i.e.*, unwelcome touching and rubbing) directed at both plaintiffs.  Smith specifically recounted one occasion wherein Baines grabbed at Smith's genitals which was witnessed by fellow NFTA employee Bryant Morrow.  No affidavit from Mr. Morrow is provided with respect to this incident.[7]  Smith also recounts one occasion when Baines told him that he'd like to have sex with Newman.

*Plaintiff Newman's claims as they relate to discrimination based on sex*

These allegations are also germane only to the Second cause of action.  As it relates to Newman, paragraphs 34 through 39 of the Amended Complaint contain the bulk of his allegations.  They include the alleged incidents detailed above that involved both plaintiffs, and also allege that Baines "repeatedly and often in the presence of others" made suggestive comments about Newman's buttocks and said that he'd like to have sex with him.  It is alleged that, on February 5, 2002, Baines cornered Newman on a moving walkway in the airport

---

[7]Defendants have submitted an internal witness statement signed by Mr. Morrow (whose first name is Bryant, not Brian as plaintiffs contend), apparently in conjunction with an investigation into an internal complaint filed by plaintiff Newman, that he never heard Baines make any statements or sexual references about males. (Dkt. #22-11).

and rubbed his mid-section against Newman's body and on April 21, 2002 Baines

told Newman that he was going to strap a saddle on Newman's back "and ride

your ass like a mother-fucking horse".   In response to defendants' motions,

Newman alleged an additional incident wherein Baines told him about his

willingness to perform oral sex on a well-known male pop star, as well as on

Newman.  He also claimed that a fellow employee, Ronald Hall, had told him that

Baines told Hall that he wanted to have sex with Newman and his brother.  No

witness affidavit from Mr. Hall is provided.

## DISCUSSION

The Court cites current authority for the familiar standard:

> "***[S]ummary judgment is appropriate where there
> exists no genuine issue of material fact and, based on
> the undisputed facts, the moving party is entitled to
> judgment as a matter of law." *D'Amico v. City of New
> York*, 132 F.3d 145, 149 (2d Cir.1998).  A material fact is
> one that would "affect the outcome of the suit under the
> governing law," and a dispute about a genuine issue of
> material fact occurs if the evidence is such that "a
> reasonable [factfinder] could return a verdict for the
> nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477
> U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *R.B.
> Ventures, Ltd. v. Shane,* 112 F.3d 54, 57 (2d Cir.1997).  In
> determining whether there is a genuine issue of material
> fact, a court must resolve all ambiguities, and draw all
> inferences, against the moving party.  *United States v.
> Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d

176 (1962) (per curiam); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987).

*Beth Israel Medical Center* v. *Horizon Blue Cross and Blue of New Jersey, Inc.,* 448 F.3d 573, 579 (2d Cir. 2006); *see also GlobalNet Financial.Com, Inc.* v. *Frank Crystal & Co., Inc.,* 449 F.3d 377, 382 (2d Cir. 2006).   In response to a properly supported summary judgment motion, the party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but *** must set forth specific facts showing that there is a genuine issue for trial."   F.R.Cv.P. 56(e); *GlobalNet Financial.Com, Inc., supra*; *see also Kerzer* v. *Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998) ("conclusory allegations, conjecture and speculation *** are insufficient to create a genuine issue of fact"). Furthermore, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Not every factual dispute will preclude summary judgment, however. Summary judgment is appropriate where there is "no *genuine* issue of *material* fact." *Anderson, supra*, 477 U.S. at 248 (emphasis in original).   A genuine issue of material fact exists if the evidence in the record "is such that a reasonable jury could return a verdict for the nonmoving party." *Ibid*.   Stated another way, there

is "no genuine issue as to any material fact" where there is a "complete failure of proof concerning an essential element of the nonmoving party's case." *Celotex*, *supra* at 323.

This summary judgment standard applies with equal force to discrimination cases as it does to other cases. *See Ashton* v. *Pall Corp.*, 32 F. Supp. 2d 82, 87 (E.D.N.Y. 1999) ("[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation.") (*quoting Meiri* v. *Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)). However, courts must be aware that evidence of discrimination is rarely overt. *See Bickerstaff* v. *Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999) ("[E]mployers are rarely so cooperative as to include a notation in the personnel file that the [adverse employment action] is for a reason expressly forbidden by law.") (quoting *Ramseur* v. *Chase Manhattan Bank*, 865 F.2d 460, 464-465 (2d Cir. 1989)). In addition, courts must "also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Ibid.* Thus, the issue for the court is "whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances." *Ibid.*

Title VII states that "[i]t shall be an unlawful employment practice for an employer *** to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin \*\*\*." 42 U.S.C. §2000e-2(a)(1)[8]. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris* v. *Forklift Sys., Inc*., 510 U.S. 17, 21 (1993) (quotations and citations omitted).

"In order to establish a claim of hostile work environment, a plaintiff must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Demoret* v. *Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (*citing Harris, supra* at 21; *Cruz* v. *Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000)). Plaintiffs herein must further show, not only that they subjectively perceived the environment to be abusive, but that the environment was objectively hostile and abusive. *Ibid.* (*citing Hayut* v. *State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir.2003)). Plaintiffs must lastly show that "a specific basis exists for imputing the conduct

---

[8]This Court will analyze plaintiffs' federal and state law claims together because the Second Circuit applies federal standards of proof to discrimination claims brought under NYHRL. *Mandell* v. *County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003); *Torres* v. *Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997) (finding that claims under NYHRL are analytically inseparable from Title VII claims).

that created the hostile environment to the employer." *Richardson* v. *New York Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir. 1999) (quotations and citations omitted).

In determining whether an environment is hostile, this Court must look at the totality of the circumstances of the alleged conduct including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, *supra* at 23. "To withstand summary judgment, a 'plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous or concerted to have altered the conditions of [his] working environment.'" *Horsford* v. *Salvation Army,* 2001 WL 1335005, *9 S.D.N.Y. 2001) (*quoting Whidbee* v. *Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000)). In other words, the incidents alleged "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.*" Demoret, supra* at 149 (*quoting Alfano* v. *Costello,* 294 F.3d 365, 374 (2d Cir.2002)).

In their summary judgment motions, defendants urge that the "stories of harassment told by the [p]laintiffs $_{***}$" create no triable issue regarding the claims of male on male sexual harassment or black on black racial harassment and are insufficient as a matter of law to support any of the claims in the Amended

Complaint.  They argue that, although plaintiffs made many allegations regarding the conduct of defendant Baines as harassing them on the basis of both sex and race, none has been substantiated with proof in admissible form.  They further state that the internal NFTA investigations likewise found most allegations were without merit and, upon those occasions where a complaint was substantiated, appropriate action was taken by the NFTA.[9]  Further, when plaintiffs did complain about Baines's conduct to various internal departments at the NFTA, the primary bases of the complaints were neither racial nor sexual harassment in nature (with the exception of the sexual harassment complaint filed by Smith regarding the lewd photograph and the sexual harassment complaint filed by Newman after he filed his EEOC charge).[10]  The Court finds that defendants presented proof, in evidentiary form, to support their arguments and that the motions are properly supported.

*The Race Discrimination Claims*

With respect to the claims based on race, viewing the evidence outlined above in a light most favorable to plaintiffs, the Court finds that plaintiffs have

---

[9]Newman's internal NFTA complaint complained only of sexual harassment, not racial harassment as he now claims.  Nevertheless, upon completion of the investigation they changed Newman's assignment, as he had requested.  Smith's internal NFTA complaint regarding the lewd photograph resulted in Baines admitting to giving Smith the picture and the NFTA issuing a formal warning, providing further training on his role as supervisor and threatening termination in the event that any similar incident occurred again.

[10]See, footnote 9.

presented insufficient evidence to raise a genuine issue of material fact with regard to their hostile work environment claim. While the Amended Complaint's *allegations* of continuous, repeated or regular comments and conversations utilizing the word "nigger" in an offensive manner and derogatory context — including its use in reference to slavery times and in denigrating plaintiffs' intellect may suggest a severe and pervasive environment —, the *proof* regarding such comments and conversations reveals that they occurred only occasionally and not continuously as originally alleged. In other words, in response to these summary judgment motions, the specific facts of such comments and behavior — as plaintiffs are required to produce — did not equate to the pervasiveness plaintiffs allege in the Amended Complaint. Plaintiff Newman presented only three specific instances of racial discrimination[11]: the July 2001 comments made while at Jake's restaurant in the airport regarding how Baines hated "niggers" and that he was hired to fire all the "niggers", the comment in August 2001 that he was "the white man's nigger ***" and the "one occasion" wherein Baines complained about being black, stating he would be white if given the chance. The former two incidents do not involve plaintiff Smith and the latter was purportedly made in Smith's presence. Plaintiff Smith relates three additional

---

[11]The evidence presented by plaintiff Newman regarding his not being hired for the Facility Maintenance Department position is not suggestive of race discrimination as there is a total lack of evidence regarding this incident to in any way infer that it was race related.

specific incidents — to wit, the March 2, 2000 incident wherein Baines called him a dumb nigger and the later time when Baines threatened him physically[12], a comment Baines made to Smith in February, 2000 to the effect that the NFTA sent Baines because Smith "was the kind of nigger that can't be controlled" and the October 2001 conversations regarding Kearns' hiring wherein Baines made statements about Smith not getting hired because he was black or because the NFTA wanted a white female for the position.  These incidents did not involve plaintiff Newman. The other "proof" of racial comments or behavior occurring "on one or more occasions" or at "numerous" or "various" times does not provide the Court with facts specific enough to defeat a properly supported summary judgment motion.  The Court is then left with three incidents as they relate to Newman and four as they relate to Smith.

Looking at the totality of the circumstances, including the fact that these incidents occurred over an approximately three-year time period, the relative severity of same and the context in which they occurred[13] and that there was a

---

[12]The evidence regarding the March 2, 2000 incident involving plaintiff Smith provides little evidence of racial harassment.  Although the boxes checked at the top of the form indicate that the inappropriate conduct pertained to race, color and work procedures, the focus of that altercation and Smith's complaints relative thereto was clearly on Baines' verbally attacking him because he perceived that Smith  had challenged his authority.  Smith relayed his feelings of physical intimidation due to Baines threatening to harm him if he didn't start to cooperate, not because he is African American.

[13]For example, some occurred as unrelated comments and were not the subject or focus
(continued...)

lack of union grievance or internal NFTA complaints racial harassment by Baines,

the Court finds that no reasonable trier of fact could conclude that the workplace

was so permeated with racially discriminatory intimidation, ridicule and insult so

as to alter either plaintiff's conditions of employment.   Therefore, summary

judgment will be granted dismissing plaintiffs' First and Seventh causes of action

in their entireties.[14]

*The Sex Discrimination Claims*

With respect to the claims based on sex, viewing the evidence outlined

above in a light most favorable to plaintiffs, the Court finds that plaintiffs have

presented sufficient evidence to raise a genuine issue of material fact with respect

to their hostile work environment claim.   Each plaintiff specified no fewer than

five incidents wherein he was subjected to offensive comments, jokes and slurs

of a sexual nature involving Baines[15].   With respect to Smith, these incidents

involved (1) exposing him to lewd pictures, (2) inappropriate behavior such as

---

[13](...continued)
of the conversation such as the argument over Smith not cooperating, or a discussion regarding Baines' perception as to why Smith did not get a promotion.  Another relevant contextual fact is that others in the workplace used the term "nigger", most notably plaintiff Smith.

[14]Because plaintiffs' Title VII claims fail, summary judgment will be granted dismissing the state law claims as well (the Seventh and Eighth causes of action). *See, VanZant* v. *KLM Royal Dutch Airlines,* 80 F.3d 708, 714 - 715 (2d Cir. 1996).

[15]With the exception of the cartoon incident, which Smith could not attribute to Baines but which purportedly occurred at work and involved other employees.

grabbing at his genitals and (3) engaging in a regular course of vulgar comments relating to homosexual desires and activities.  With respect to Newman, the behavior was exacerbated because it related to Baines' desire, expressed repeatedly to Newman and others, to have sex with him.  Baines also exposed Newman to inappropriate touching such as rubbing up against him and engaged in a regular course of inappropriate and vulgar comments expressing his desire to have sex with Newman, his brother and other men, including a particularly vivid conversation wherein Baines threatened to strap a saddle on Newman and ride him.  While the Court acknowledges that defendants dispute plaintiffs' accounts with regard to most of this alleged conduct, as well as the offensive nature of such conduct, such disputes are subject to credibility determinations and, therefore, more properly suited for a jury rather than the undersigned on a motion for summary judgment on this issue.  *See Reimer* v. *Heritage Asset Mgmt.*, 1999 WL 409513, at *5 (W.D.N.Y. 1999) (finding four episodes of gender-based harassment over a five-month period to be sufficient to defeat defendant's summary judgment motion); *compare, Clark County School Dist.* v. *Breeden*, 532 U.S. 268, 271 (2001) (occasional incidents or remarks, or even occasional physical contact, are insufficient to create an actionable hostile environment claim).  Notwithstanding this finding, plaintiffs have submitted insufficient evidence to show that a basis exists for imputing the offensive conduct to the employer.

An employer may be held vicariously liable under Title VII for an actionable hostile work environment that is created by a supervisor with immediate authority over plaintiffs. *Burlington Indus.,Inc.* v. *Ellerth*, 524 U.S. 742, 765 (1998); *Faragher* v. *City of Boca Raton*, 524 U.S. 775, 807 (1998). However, in the absence of a tangible employment action taken against plaintiffs, an employer may escape liability by raising an affirmative defense. "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise" (known as the *Ellerth/Faragher* test). *Ellerth, supra*, at 765.

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761. There is no evidence presented herein upon which a reasonable trier of fact could conclude that either plaintiff suffered a tangible employment action. To the extent that it is argued, plaintiffs' evidence regarding their failed promotion attempts have nothing to do with their sexual harassment claims and the evidence of the various reassignments of plaintiffs to different shifts is inapposite because such came at plaintiffs' requests and undisputedly

did not involve significantly different job responsibilities.  As such, the Court must

determine whether the NFTA has satisfied its burden in raising their affirmative

defense.

It is undisputed that the NFTA had a policy on sexual harassment in the

workplace.   The policy utilizes the EEOC's (Equal Employment Opportunity

Commission's) definition of sexual harassment and, in part, states:

> "The Authority considers sexual harassment a form of
> employee misconduct subject to disciplinary action, not
> only against those individuals engaging in sexual
> harassment,but also against supervisory and managerial
> personnel who knowingly allow such behavior to
> continue."

The policy further advises:

> "Incidents of sexual harassment should be reported
> immediately to your supervisor, another management
> employee in your department, a Human Resources
> representative or the Director, EEO/Diversity
> Development.   The Authority will conduct   swift,
> thorough and confidential investigations of each
> complaint and, if warranted, take corrective action *** ."

(Dkt. #20-19).   The NFTA maintains an office of EEO/Diversity Development

which handles the receipt and investigation of complaints regarding, *inter alia,*

sexual harassment and its Director is Mary Pugh (an African American female).

The NFTA also distributes an explanatory guideline and anti-harassment pledge which employees are to acknowledge. (Dkt. #20-19). Plaintiffs have not disputed that they were aware of this policy and, in fact, had filed complaints with Ms. Pugh with respect to some of the incidents alleged in the Amended Complaint. The Court therefore finds that the NFTA has established that it exercised reasonable care to prevent and correct promptly any harassing behavior and, hence, has satisfied the first prong of the *Ellerth/Faragher* test.

While it is undisputed that plaintiff Smith availed himself of the NFTA's procedures and remedies under its sexual harassment policy with respect to the lewd photograph incident, it is also undisputed that he complained of no other sexually harassing behavior.  In fact the evidence submitted revealed several NFTA complaints (with the EEO/Diversity office and various other managerial personnel) and union grievances Smith filed during the time period alleged in the Amended Complaint and none of them complained of sexually harassing behavior outside of the single lewd photograph.  As such, the Court finds that Smith failed to take advantage of the preventive and corrective opportunities provided by his employer.

Similarly, Newman did file an internal NFTA complaint regarding the *type* of sexual harassment alleged in the Amended Complaint, but the extent of the cited harassment was far less that what is alleged in the Amended Complaint.

The internal complaint stated, as the totality of Newman's complaints regarding sexual harassment, that " $_{***}$ on several occasions he said I was attractive and wanted to have sex with me $_{***}$ ". (Dkt. #22-9).  Further, this complaint was not filed until after Newman had retained counsel and filed a Notice of Claim (Dkt. #22-7).  Evidence submitted also revealed a delay in the NFTA's investigation because Newman's attorney did not want him to participate in the process (Dkt. #22-9).  Further, Newman, availed himself of the NFTA's internal complaint procedures both prior and subsequent to this complaint, with no mention of any other sexual harassment by Baines (see, Dkt. ##29-7, 29-11, 29-13).  As such, the Court finds that Newman failed to take advantage of the preventive and corrective opportunities provided by his employer.

Plaintiffs' claims that they were reluctant to report their claims due to either a fear of Baines, a fear of retaliation or a feeling that it would do no good are unavailing.  Plaintiffs have provided no evidence, other than their subjective thoughts and beliefs on this issue.  There has been no evidence submitted which reasonably supports a finding that the NFTA has ignored or resisted similar complaints in the past, or has taken adverse actions against similar employees in response to such complaints.  *Leopold* v. *Baccarat, Inc.,* 239 F.3d 243, 246 (2d Cir. 2001).  Plaintiffs' union membership and the numerous other internal NFTA complaints also belie this argument.  The Court therefore finds that the NFTA has

satisfied the second prong of the *Ellerth/Faragher* test in that plaintiffs unreasonably failed to take advantage of the preventive or corrective opportunities provided by the NFTA with respect to their claims of sexual harassment.

Therefore, summary judgment will be granted dismissing plaintiffs' Second and Eighth causes of action in their entirety.[16]

*The Other Discrimination Claims*

Because the Court has already held that plaintiffs suffered no tangible employment action, the Court also holds (based on the same factors), that they suffered no adverse employment action that would satisfy their burden in establishing a claim of retaliation.  *Terry* v. *Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003; *Galabya* v. *New York City Bd. of Ed.*, 202 F.3d 636 (2d Cir. 2000).

Plaintiffs' remaining discrimination claims are based on race and have been asserted via claims for relief under 42 U.S.C. §1981, 42 U.S.C. §1983, 42 U.S.C. §1985 and the New York Human Rights Law.  They operate out of the same set of facts as the Title VII claims.  Although discrimination can take different forms, and the standards by which they are judged may not be entirely interchangeable, the Supreme Court has opined that "there is good sense in seeking generally to harmonize the standards of what amounts to actionable harassment." *See*

---

[16]See footnote 14.

*Faragher, supra*, at 787, n.1; *see also, Van Zant, supra.*  Accordingly, plaintiffs'
remaining racial discrimination claims are appropriately analyzed and decided
under the same set of legal principles described above and the individual
essential elements of each need not be discussed in detail. *See id.; see also Manatt*
v. *Bank of Am., NA,* 339 F. 3d 792 (9th Cir. 2003); *Citroner* v. *Progressive Cas. Ins.
Co.*, 208 F. Supp. 328, 339 (E.D.N.Y. 2002).  For many of the same reasons that
plaintiffs' Title VII hostile work environment based on race claim fails, plaintiffs'
remaining racial discrimination claims also fail.

Further, it is undisputed that defendants Baines and Flanagan are not
policy making employees and had no authority to promote, terminate or even
unilaterally discipline other employees and that plaintiffs were aware of this
(although they stated subjectively that they were suspicious of it).  It is also
undisputed that plaintiffs were union members and were aware of the protections
that union membership entails (although they, also subjectively and without
reasonable support, stated that they did not trust this protection).

It is also undisputed that, in addition to and in the same manner as its
sexual harassment policy, the NFTA maintains and administers a discrimination
policy covering all manner of civil rights complaints.  Plaintiffs failed to avail
themselves of these procedures regarding the bulk of the allegations of race
discrimination in the Amended Complaint.

There is no evidence that defendant Baines took any steps to follow through with his threats as plaintiffs allege.  There is no evidence that defendant Flanagan ever attempted to fire or discipline either plaintiff as is alleged.  There is no evidence that either Baines or Flanagan had anything to do with either plaintiff not getting the promotions for which they applied.  There is no evidence of any tangible employment action taken against plaintiffs as a result of the race discrimination as they have alleged.  There is no evidence that plaintiffs were treated differently than their co-workers who were of a different race.  There is no evidence of a conspiracy between Baines, Flanagan and/or any other NFTA employee to discriminate against plaintiffs on the basis of their race.  Hence, summary judgment is appropriate for plaintiffs' remaining causes of action.

## **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that defendants' summary judgment motions (Dkt. ##20 & 24) are hereby GRANTED in their entirety and plaintiffs' Amended Complaint (Dkt. #6) is hereby dismissed.  For the same reasons, all cross-claims are dismissed as moot.  The Clerk of the Court is directed to take steps to close this case.

DATED:      Buffalo, N.Y.
            April 11, 2007

                                _____
                                    /s/ John T. Elfvin
                                JOHN T. ELFVIN
                                S.U.S.D.J.